**Robert M. WILSON, Petitioner,**

v.

**Phillip HEATH, Respondent.**

**No. 9:11–CV–0827 (DNH).**

United States District Court,
N.D. New York.

April 11, 2013.

Robert M. Wilson, Ossining, NY, Petitioner, pro se.

Eric T. Schneiderman, New York State Attorney General, Of Counsel: Paul B. Lyons, Esq., Assistant Attorney General, New York, NY, for Respondent.

## DECISION and ORDER

DAVID N. HURD, District Judge.

## I. INTRODUCTION

Petitioner Robert M. Wilson has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenges a 2009 judgment of conviction in Albany County Court, following a jury trial, of third degree criminal sale of a controlled substance. Dkt. No. 1, Petition ("Pet.") at 2. Respondent has filed a response to the petition, a memorandum of law, and the relevant state court records. Dkt. No. 9, Response; Dkt. No. 8, Respondent's Memorandum of Law ("Resp't Mem."); Dkt. No. 10, State Court Records. Petitioner has filed a reply. Dkt. No. 13, Memorandum in Opposition. For the reasons that follow, the petition will be denied and dismissed.

## II. BACKGROUND

### A. Petitioner's Arrest and Trial

The Appellate Division, Third Department, concisely summarized the facts underlying petitioner's criminal offense and trial as follows:

> Following a jury trial, defendant was convicted ... of criminal sale of a controlled substance in the third degree based upon evidence that he sold cocaine to a confidential informant (hereinafter CI) in the City of Albany on March 19, 2008. Upon his conviction, defendant was sentenced as a second felony offender to a prison term of eight years with three years of postrelease supervision
> ....
>
> The testimony at trial established that in March 2008, Scott Gavigan, a detective with the Albany Police Department, planned a controlled buy operation to be conducted at the CI's residence in the City of Albany. On the morning of March 19, 2008, the CI was brought to the police station and strip-searched to ensure she possessed no contraband prior to the operation. Gavigan, another officer and the CI then traveled to the general area of Lexington Avenue in an unmarked van. Gavigan then walked to the CI's address and checked the porch area for contraband, with negative results. The CI was then equipped with a concealed sound transmitting device and $40 in prerecorded buy money. The CI then used her cell phone to call defendant with whom she was acquainted. Defendant answered, the CI told him she needed a "40," and defendant replied that he would be right there. The CI then stepped out of the van and started to walk to her address, but had to return to the van when the transmitter began to heat up and burn her. In the meantime, other officers observed defendant arrive at the front of the CI's residence. The CI walked back to that location and met defendant on the porch. The CI and defendant stepped into the porch vestibule, and defendant gave the CI three small pieces of an off-white, rock-like substance in return for the $40. Defendant and the CI then stepped off the porch and walked up the street together a short way before defendant departed on a bicycle. Defendant was then stopped a short distance away by a uniformed officer under the pretense of investigating a report of a stolen bicycle, his identity was confirmed, and he was released. The CI returned to the officers in the van and turned over the three substances that forensic testing later revealed to be cocaine. In order to protect the identity of the CI, defendant was not arrested that day, but instead charged by sealed indictment several weeks later.

*People v. Wilson,* 78 A.D.3d 1213, 1213–14, 910 N.Y.S.2d 276 (3d Dep't 2010).

## B. Direct Appeal

Petitioner, represented by counsel, filed a direct appeal with the Appellate Division, Third Department, raising the following claims: (1) the trial court improperly denied his request for a mistrial after a prospective juror commented that he may have seen petitioner in prison; (2) the trial court erred by allowing evidence of petitioner's prior convictions in the event that he testified; (3) the trial court erred by instructing a juror that he could not rely on his professional experience as a law clerk during deliberations; (4) the sentence was excessive and penalized petitioner for going to trial; (5) the verdict was against the weight of the evidence; (6) the verdict should be reversed "in the interests of justice" because, among other reasons, petitioner was denied an adjournment; and (7) ineffective assistance of trial counsel. Dkt. No. 10, Ex. B, Appellant's Brief ("Appellant's Br.") at 15.[1]

With regard to the ineffective assistance of counsel claim, petitioner specifically alleged that counsel: (a) failed to preserve several unidentified issues for appeal; (b) erred in some unexplained way relating to the trial court's *Sandoval* ruling; and (c) failed to object to the trial court's instruction that a law clerk serving on the jury could not bring his professional experience to light during deliberations. Appellant's Br. at 32–33.

On April 4, 2010, the Appellate Division unanimously affirmed the conviction. *Wilson,* 78 A.D.3d at 1217, 910 N.Y.S.2d 276. First, the Appellate Division found that the trial court did not abuse its discretion by "denying [petitioner's] motion for a mistrial regarding an answer given by a potential juror" that he may have seen petitioner in jail. *Id.* at 1214, 910 N.Y.S.2d 276. The Appellate Division noted that

the trial court "immediately interrupted the juror, who was later excused," and "made an appropriate inquiry of the remaining jurors." *Id.* at 1215, 910 N.Y.S.2d 276. Moreover, the trial court's "subsequent curative instructions sufficiently alleviated any potential prejudice to [petitioner] and ensured his right to an impartial jury." *Id.* at 1214–15, 910 N.Y.S.2d 276 (citations omitted).

With regard to petitioner's claim contesting the admission of his prior convictions, the Appellate Division concluded that the trial court "properly considered [petitioner's] history of criminal acts and weighed their probative value with the risk of unfair prejudice, such that it cannot be concluded that the court abused its discretion." *Id.* at 1215–16, 910 N.Y.S.2d 276 (citations omitted).

Turning to petitioner's claim that the trial court erred by instructing a juror that he could not reveal his professional experience as a law clerk during deliberations, the Appellate Division found that this claim was unpreserved for review because petitioner neither objected nor requested a mistrial with respect to this issue. *Id.* at 1215, 910 N.Y.S.2d 276 (citations omitted).

Concerning petitioner's sentencing challenges, the Appellate Division concluded that "the sentence imposed was not harsh and excessive, notwithstanding that the sentence imposed after trial was greater than the sentence offered as part of a pretrial plea." *Id.* at 1217, 910 N.Y.S.2d 276. "Given the nature of the crime committed and [petitioner's] criminal history, which includes numerous convictions for drug-related crimes, [the Appellate Division] discern[ed] no extraordinary circumstances or abuse of discretion warranting a reduction of the sentence." *Wilson,* 78

---

1. Petitioner's Appellate Brief is not paginated; thus, for sake of clarity, the cited page numbers refer to the electronically generated page numbers at the top right hand corner of each page.

A.D.3d at 1217, 910 N.Y.S.2d 276 (citations omitted).

Next the Appellate Division dismissed petitioner's weight of the evidence claim, holding that "[b]ased on the testimony of the police officers, the CI and the forensic scientist, all of whom described their roles in and observations of the controlled buy that led to [petitioner's] arrest, we find, in evaluating the evidence in a neutral light and according appropriate deference to the jury's assessment of witness credibility, that the verdict is not against the weight of the evidence." *Id.* at 1216, 910 N.Y.S.2d 276 (citations omitted).

With regard to petitioner's ineffective assistance claim, the Appellate Division concluded that "[t]he record reflects that counsel appropriately conducted jury voir dire, made articulate opening and closing statements, effectively cross-examined witnesses, including the CI, successfully moved to have the majority of the audiotape ruled inadmissible, and made appropriate objections and motions, such that defendant was afforded meaningful representation." *Id.* Finally, the court rejected, as "without merit," petitioner's "remaining argument, that the verdict should be set aside in the interest of justice." *Id.* at 1217, 910 N.Y.S.2d 276.

Petitioner subsequently moved the New York Court of Appeals for leave to appeal "all claims" raised in the Appellate Division. Dkt. No. 10, Ex. E, Petitioner's Letter to Judge Lippman. Petitioner's counsel separately applied for leave to appeal, but solely to the claim that the trial court improperly denied petitioner's request for a mistrial in response to the prospective juror's jail comment. Dkt. No. 10, Ex. F. On January 26, 2011, 16 N.Y.3d 747, 917 N.Y.S.2d 628, 942 N.E.2d 1053 (2011), the Court of Appeals denied leave to appeal. Dkt. No. 10, Ex. H, Certificate Denying Leave.

## C. The Petition

■ On July 12, 2011, petitioner timely filed this habeas action. *See* Pet. at 7. The petition does not expressly state any grounds for relief, but rather incorporates by reference a contemporaneously filed "memorandum of law." *See* Pet., Attach. 1, Memorandum of Law ("Petitioner's Mem."). While not a model of clarity, liberally construed petitioner's memorandum of law raises the following grounds for habeas relief: (1) the trial court's *Sandoval*[2] ruling permitting inquiry into certain of petitioner's prior convictions violated due process; (2) the trial court erred by denying petitioner's request for a mistrial following a comment from a prospective juror that he may have seen petitioner in prison; (3) the verdict was against the weight of the evidence; (4) the trial court improperly instructed a juror that he could not use his professional experience as a law clerk during deliberations; and (5) ineffective assistance of trial counsel. *See* Petitioner's Mem. at 1–17.

With regard to his ineffective assistance claim, petitioner specifically alleges that counsel: (a) erred in some unexplained way concerning the trial court's *Sandoval* ruling; (b) failed to object to the trial court's instruction to the law clerk juror; (c) failed to investigate and request a curative instruction following a prospective juror's comment that he may have seen petitioner in jail; (d) failed to investigate the CI's criminal history for impeachment purposes; (e) failed to object to the admission of a DVD recording of the drug transac-

**2.** By way of background, pursuant to *People v. Sandoval*, 34 N.Y.2d 371, 374–78, 357 N.Y.S.2d 849, 314 N.E.2d 413 (1974), a defendant is entitled to an in limine ruling setting forth the extent to which the prosecution may cross-examine him regarding prior crimes and bad acts should he choose to testify.

tion that did not contain audio; and (f) failed to object to the prosecution's misconduct in offering the DVD without audio and narrating the video to suggest that there was a transfer of money for drugs. Petitioner's Mem. at 14–17.

## III. DISCUSSION

### A. Standard of Review

 Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if the adjudication of the claim (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. §§ 2254(d)(1)-(2); *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). AEDPA "imposes a highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson*, —— U.S. ——, 131 S.Ct. 1305, 1307, 179 L.Ed.2d 374 (2011) (per curiam) (citations omitted). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro*, 550 U.S. at 473, 127 S.Ct. 1933.

 However, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed de novo.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir.2009) (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir.2006)).

 Each of petitioner's claims is discussed below, keeping in mind that he

bears the burden of establishing that he is entitled to habeas relief. *See Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir.2011) ("[I]t is the petitioner who bears the burden of proving that he is being held contrary to law[.]").

### B. *Sandoval* Claim

First, petitioner contends that the trial court's *Sandoval* ruling violated his due process rights by permitting inquiry into several of his prior convictions in the event he chose to testify. Petitioner's Mem. at 1–4. The Appellate Division denied this claim on the merits, concluding that the trial court "properly considered [petitioner's] history of criminal acts and weighed their probative value with the risk of unfair prejudice[.]" *Wilson*, 78 A.D.3d at 1215–16, 910 N.Y.S.2d 276.

 This claim does not present a constitutional issue cognizable on federal habeas review. Courts within this Circuit have concluded that *Sandoval* claims are barred from habeas review where, as here, the petitioner failed to actually take the stand and testify at trial. *See, e.g., Mercado v. Phillips*, No. 1:04–CV–2204, 2011 WL 1157617, at *5–6 (S.D.N.Y. Feb. 22, 2011) (citing *Luce v. United States*, 469 U.S. 38, 43, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984)); *Massey v. New York*, No. 1:10–CV–0857, 2011 WL 6180452, at *8–9 (W.D.N.Y. Dec. 13, 2011); *Jones v. Walsh*, No. 1:08–CV–0915, 2008 WL 2064555, at *4 (E.D.N.Y. May 12, 2008); *Grace v. Artuz*, 258 F.Supp.2d 162, 172 (E.D.N.Y.2003). Pursuant to the reasoning in the aforementioned decisions, this claim will be denied and dismissed.

### C. Prejudicial Jury Comment

Under Ground Two, petitioner claims that the trial court violated due process and his right to an unbiased jury when it denied his motion for a mistrial following

comments from a prospective juror that he may have seen petitioner in jail. Petitioner's Mem. at 5. The Appellate Division aptly summarized the events underlying this claim as follows:

> During voir dire, in response to [the trial court's] inquiry of the jury pool whether any of the jurors knew or were acquainted with defendant, defendant's lawyer or the prosecuting attorney, one of the prospective jurors—a retired prison warden—answered that the "defendant seems vaguely familiar. I don't know if I ran across him in prison or . . . ." [The trial court] immediately interrupted the juror, who was later excused, and the court subsequently denied the motion for a mistrial based on this comment. The court then issued curative instructions upon the continuation of voir dire that jury members were to disregard "what jurors say during jury selection [as it] certainly does not constitute evidence" and further inquired, with negative results, if there were any potential jurors that would be unable to follow that instruction.

*Wilson*, 78 A.D.3d at 1214–15, 910 N.Y.S.2d 276. In dismissing this claim, the Appellate Division concluded that the trial court "made an appropriate inquiry of the remaining jurors, and its subsequent curative instructions 'sufficiently alleviated any potential prejudice to defendant and ensured his right to an impartial jury[.]' " *Id.* at 1215, 910 N.Y.S.2d 276 (citations omitted). As discussed below, the Appellate Division's dismissal of this claim was neither contrary to, nor an unreasonable application of, Supreme Court precedent.

It is respondent's position that the merits of this claim should not even be reached because it is procedurally barred. *See* Resp't Mem. at 11. According to respondent, petitioner never presented this claim to the Appellate Division on federal constitutional grounds. *Id.* Instead, petitioner raised this claim solely in terms of state law, which is insufficient to permit federal habeas review. *Id.* This argument is unpersuasive.

 Under AEDPA, a federal court may not grant habeas relief unless the petitioner has first exhausted his claims in state court. *See* 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel,* 526 U.S. 838, 842, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). This requires that a petitioner "fairly present" each claim for habeas relief in each appropriate state court. *Baldwin v. Reese,* 541 U.S. 27, 29, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004). However, a petitioner is not required to cite "book and verse on the federal constitution" in order for a federal claim to be "fairly presented." *Picard v. Connor,* 404 U.S. 270, 278, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). Instead, exhaustion may be satisfied where the legal basis of a claim made in state court is the "substantial equivalent" of the habeas claim. *Id.* at 278, 92 S.Ct. 509. "This means, in essence, that in state court the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." *Daye v. Attorney Gen. of State of N.Y.,* 696 F.2d 186, 192 (2d Cir.1982) (en banc). A petitioner may fairly present his federal claim to the state court through "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *Daye,* 696 F.2d at 194.

 Here, respondent is correct in pointing out that petitioner did not cite to any federal law, federal case, or constitutional provision on direct appeal. *See* Appellant's Br. at 16–18. Petitioner did,

however, rely on state court cases that generally discuss the parameters of due process and a defendant's right to a fair trial. *See* Appellant's Br. at 17 (citing *People v. Brown*, 62 A.D.2d 715, 405 N.Y.S.2d 691 (1st Dep't 1978)). As noted in *Daye*, a petitioner can inform the state court of his claim by citing constitutional precedent. 696 F.2d at 192. "Constitutional precedent" is not limited to federal cases, but encompasses state cases that "employ[ ] constitutional analysis." *Id.* at 195. Moreover, petitioner asserted this claim to the Appellate Division in particular terms so as to call to mind his constitutional right to a fair and impartial jury. *See* Appellant's Br. at 17. Indeed, this is how the Appellate Division viewed the claim. *See Wilson*, 78 A.D.3d at 1215, 910 N.Y.S.2d 276 (concluding that the trial court's inquiry and curative instruction ensured petitioner's right to an impartial jury). As such, it is found that petitioner has sufficiently exhausted this claim.

 Nonetheless, this claim fails on the merits. "In essence, the right to [a] jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors. The failure to accord an accused a fair hearing violates even the minimal standards of due process." *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); *see also Devison v. Cunningham*, No. 1:09–CV–1031, 2010 WL 5060789, at *8 (S.D.N.Y. Oct. 15, 2010) ("The Sixth Amendment, which is made applicable to the States by the Fourteenth Amendment, guarantees a criminal defendant the right to trial by an impartial jury."). However, as the Supreme Court has explained:

> [D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that the rule, few trials would be constitutionally acceptable. The safeguards of juror impartiality, such as voir dire and protective instructions from the trial judge, are not infallible; it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.

*Smith v. Phillips*, 455 U.S. 209, 217, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

 " '[T]he Constitution lays down no particular tests and ... is not chained to any ancient and artificial formula' " to attain juror impartiality or indifference. *United States v. Torres*, 128 F.3d 38, 43 (2d Cir.1997) (quoting *United States v. Wood*, 299 U.S. 123, 145–46, 57 S.Ct. 177, 81 L.Ed. 78 (1936)). Instead, "in each case a broad discretion and duty reside[s] in the [trial] court to see that the jury as finally selected is subject to no solid basis of objection on the score of impartiality." *Frazier v. United States*, 335 U.S. 497, 511, 69 S.Ct. 201, 93 L.Ed. 187 (1948). The trial judge has broad discretion in the questioning of potential jurors during voir dire to detect bias. *See, e.g., Mu'Min v. Virginia*, 500 U.S. 415, 423–24, 111 S.Ct. 1899, 114 L.Ed.2d 493 (1991). "Given the special capacity of the trial judge to evaluate actual bias on the part of prospective jurors, that judge's determination in this regard is accorded great deference, since an appellate court [cannot] easily second-guess the conclusions of the decisionmaker who heard and observed the witnesses." *Torres*, 128 F.3d at 44 (citations and internal quotation marks omitted).

 Moreover, jurors are presumed to be impartial. As the Supreme Court explained:

> To hold that the mere existence of any preconceived notion as to the guilt or

innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

*Irvin,* 366 U.S. at 723, 81 S.Ct. 1639. Finally, in this area as in all others, jurors (or potential jurors) are presumed to follow the court's instructions. *See, e.g., Penry v. Johnson,* 532 U.S. 782, 799, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001).

In this case, the prospective juror's comment that he might have seen petitioner in jail was arguably ambiguous and did not directly implicate petitioner. *See* Dkt. No. 10, Trial Transcript ("Trial Tr.") at 32–35, 102; *Wilson,* 78 A.D.3d at 1215, 910 N.Y.S.2d 276. Nonetheless, that juror was excused and the court instructed the remaining members of the panel that they should disregard this comment and anything else they may hear during jury selection. *See* Trial Tr. at 111; *Wilson,* 78 A.D.3d at 1215, 910 N.Y.S.2d 276. Further, at the conclusion of voir dire, the court inquired whether the remaining jurors "heard anything during jury selection that [they] could not or would not be able to disregard and put out of [their] mind[.]" Trial Tr. at 111–13. The jurors stated that this was not the case. *Id.* A jury is presumed to obey a court's curative instruction, and petitioner has presented no evidence to establish otherwise in this case. *See, e.g., Richardson v. Marsh,* 481 U.S. 200, 211, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987) ("[J]uries are presumed to follow their instructions."); *United States. v. Downing,* 297 F.3d 52, 59 (2d Cir.2002) ("Absent evidence to the contrary, we must presume that juries understand and abide by a [trial] court's limiting instructions.").

Given the trial court's curative instruction and the great deference afforded in such circumstances, it cannot be concluded that the Appellate Division's denial of this claim was contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Accordingly, this claim will be denied and dismissed.

### D. Weight of the Evidence Claim

Next, petitioner argues that the verdict was against the weight of the evidence because the prosecution's case consisted of incredible testimony from an informant who had motivation to lie and admitted to using crack on the date of the alleged drug deal. Petitioner's Mem. at 7–8. Petitioner contends that no credible witness actually viewed the alleged drug transaction, and as such, the verdict cannot stand. *Id.* at 8. The Appellate Division rejected this claim on the merits, concluding that the verdict was appropriate after a neutral review of the evidence. *Wilson,* 78 A.D.3d at 1216, 910 N.Y.S.2d 276. This decision was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.

Respondent urges this claim be denied as unexhausted and procedurally barred because petitioner asserted this claim in state court based solely on state law and not in federal constitutional terms. Resp't Mem. at 11–12. While respondent's argument is supported by the record, the Second Circuit has suggested that a petitioner who raises a state law weight of the evidence claim on direct appeal has exhausted a constitutional sufficiency of the evidence claim for federal habeas purposes. *See Liberta v. Kelly,* 839 F.2d 77, 80 n. 1 (2d Cir.1988); *see also Howie v. Phillips,* No. 1:03–CV–9757, 2004 WL 2073276, at *4 (S.D.N.Y. Sept. 17, 2004) (concluding that a pro se petitioner is deemed to have raised a challenge to the

legal sufficiency of the evidence by asserting that the verdict was against the weight of the evidence). Accordingly, in an abundance of caution, this claim will not be deemed unexhausted and instead will be addressed on the merits below.

■ To the extent petitioner argues that his conviction was against the weight of the evidence, his claim will be denied. It is well settled that such claims are not cognizable in a federal habeas proceeding. *See Wright v. Conway*, No. 9:06–CV–0319 (GTS/GHL), 2009 WL 2982978, at \*9 (N.D.N.Y. Sept. 14, 2009) ("Because federal habeas corpus review is not available to remedy mere errors of state law … no cognizable federal issue is presented by a habeas claim challenging the weight of the evidence adduced at trial." (citation omitted)); *see also Mobley v. Kirkpatrick*, 778 F.Supp.2d 291, 311–12 (W.D.N.Y.2011) ("A 'weight of the evidence' argument is a pure state law claim grounded in [N.Y. Crim. Proc. Law § 470.15] … [thus,] it is not cognizable on habeas review.").

■ To the extent petitioner's claim can be interpreted as challenging the sufficiency of the evidence, it also fails. *See Horne v. Perlman*, 433 F.Supp.2d 292, 300 (W.D.N.Y.2006) ("Given that the [Appellate Division] rejected [petitioner's] weight of the evidence claim, it necessarily would have rejected a challenge to the sufficiency of the evidence."). A petitioner "bears a very heavy burden" when challenging the evidentiary sufficiency of his state criminal conviction. *Einaugler v. Supreme Court of N.Y.*, 109 F.3d 836, 840 (2d Cir.1997) (citing *Quirama v. Michele*, 983 F.2d 12, 14 (2d Cir.1993)). A criminal conviction will not be reversed if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *see also Pon-*

*napula v. Spitzer*, 297 F.3d 172, 179 (2d Cir.2002) ("[W]e review the evidence in the light most favorable to the State and the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial.").

■ Even when "faced with a record of historical facts that supports conflicting inferences [a court] must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir.1994) (citing *Jackson*, 443 U.S. at 326, 99 S.Ct. 2781). A reviewing court may neither "disturb the jury's findings with respect to the witnesses' credibility," *United States v. Roman*, 870 F.2d 65, 71 (2d Cir.1989), nor make its own "assessments of the weight of the evidence[.]" *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir.1996).

■ The evidence presented in this case was legally sufficient for a rational jury to find petitioner guilty of third degree criminal sale of a controlled substance. *See* N.Y. Penal Law § 220.39(1) ("A person is guilty of criminal sale of a controlled substance in the third degree when he knowingly and unlawfully sells … a narcotic drug …."). The prosecution presented evidence that in March 2008 the Albany Police Department planned a controlled buy operation with a confidential informant. *See* Trial Tr. at 265–302. The informant subsequently contacted petitioner to buy drugs, and on the morning of March 19, 2008, petitioner sold drugs to the informant. *See* Trial Tr. at 283–84, 294–95, 299–301, 314.

■ Petitioner raises several arguments contesting the veracity of the informant's testimony and the lack of physical

evidence demonstrating that he exchanged drugs with the informant. *See* Petitioner's Mem. at 8–10. These arguments, which boiled down merely contest the credibility of the prosecution's evidence, are insufficient to disturb the verdict. *See Marshall v. Lonberger,* 459 U.S. 422, 432–35, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983) (holding that a federal court reviewing a habeas petition may not revisit the fact-finder's credibility determinations); *Vera v. Hanslmaier,* 928 F.Supp. 278, 284 (S.D.N.Y. 1996) (noting that a habeas court is not free to make credibility judgments about the evidence or weigh conflicting testimony). Here, as in many cases,

> the jury's decision was largely a matter of choosing whether to believe [petitioner's] version of the events or to believe the version offered by the State. The jury chose to believe the State's witnesses, despite the inconsistencies in the evidence .... We cannot say that no reasonable jury could have found guilt beyond a reasonable doubt on all the evidence.

*Gruttola v. Hammock,* 639 F.2d 922, 928 (2d Cir.1981). Lastly, although petitioner emphasizes the lack of physical evidence connecting him to the crime, "a conviction may be based upon circumstantial evidence and inferences based upon the evidence[.]" *United States v. Strauss,* 999 F.2d 692, 696 (2d Cir.1993) (citations omitted).

Based upon the foregoing, it cannot be concluded that the Appellate Division's rejection of this claim was contrary to, or an unreasonable application of, clearly established Supreme Court precedent, and therefore this claim will be denied.

### E. Improper Jury Instruction

Under Ground Four, petitioner argues that the trial court erred by instructing a juror that he could not bring his professional experience as a law clerk to light during deliberations. Petitioner's Mem. at 12. According to petitioner, jurors are permitted to divulge such life experiences. *Id.* As discussed below, this claim is procedurally barred and will be dismissed.

■ A federal court will not ordinarily review a federal claim presented in a habeas petition if it has been rejected by the state courts on an "independent and adequate" state law ground. *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Murden v. Artuz,* 497 F.3d 178, 194 (2d Cir.2007); *see also Velasquez v. Leonardo,* 898 F.2d 7, 9 (2d Cir.1990) ("[F]ederal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim.").

■ Here, the Appellate Division dismissed petitioner's jury instruction claim because it was "unpreserved for review [since] ... petitioner neither objected nor requested a mistrial with respect to this issue[.]" It is well established that this contemporaneous objection rule is a firmly established and regularly followed state practice that bars subsequent habeas review. *See, e.g., Zarvela v. Artuz,* 364 F.3d 415, 418–19 (2d Cir.2004) (holding that failure to object to an allegedly improper jury charge is an independent and adequate state procedural bar); *Scott v. Fisher,* 652 F.Supp.2d 380, 425 (W.D.N.Y. 2009) (finding petitioner's claim of an erroneous jury charge procedurally defaulted because no contemporaneous objection to the charge was made, and the Appellate Division found that the issue was therefore unpreserved). Accordingly, this claim is procedurally defaulted.

■ A procedural default will "bar habeas review of the federal claim, unless the ... petitioner can show cause for the

default and prejudice attributable thereto," or demonstrate that "failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 749–50, 111 S.Ct. 2546. In an apparent attempt to establish cause, petitioner alleges that his default is the result of ineffective assistance of counsel. *See* Petitioner's Mem. at 15. As discussed below, however, petitioner's ineffective assistance claim is itself meritless, and therefore this argument provides no relief. *See McLeod v. Graham,* No. 1:10–CV–3778, 2010 WL 5125317, at *4 (E.D.N.Y. Dec. 9, 2010) ("Where, as here, a petitioner cannot prevail on the merits of his [ineffective assistance] claim[ ], he cannot overcome a procedural bar by claiming ineffective assistance of counsel."); *see also Edwards v. Carpenter,* 529 U.S. 446, 452–53, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000) (concluding that a claim of ineffective assistance of counsel can constitute cause to excuse a procedural default only if such a claim is properly exhausted itself). Moreover, petitioner cannot establish any resulting prejudice because, as explained below, his claim that the trial court gave an improper instruction is erroneous. *Pettigrew v. Bezio,* No 1:10–CV–1053, 2012 WL 1714934, at *4 (W.D.N.Y. May 15, 2012) (concluding that a petitioner cannot show actual prejudice where the underlying defaulted claim is meritless).

■ Finally, petitioner has made no showing that the failure to review this claim will result in a fundamental miscarriage of justice. *See Aparicio v. Artuz,* 269 F.3d 78, 90 (2d Cir.2001) (holding that to establish a fundamental miscarriage of justice, a petitioner must demonstrate that he is "actually innocent" of the crimes for which he has been convicted). Although petitioner claims that he is actually innocent, *see* Petitioner's Mem. at 7, his conclusory allegations of innocence are unsupported by any evidence. *Schlup v. Delo,* 513 U.S. 298, 324, 115 S.Ct. 851, 130

L.Ed.2d 808 (1995) (noting that a claim of actual innocence must be supported by "new reliable evidence"). Additionally, petitioner's technical arguments contesting his conviction (e.g., the trial court erred in denying a mistrial) do not raise a claim of actual innocence. *See Poindexter v. Nash,* 333 F.3d 372, 380 (2d Cir.2003) (noting that the concept of actual innocence is distinct from the concept of legal innocence, and a petitioner whose "argument is a technical one" does not raise "a claim of 'actual innocence' as that term is used … in habeas jurisprudence generally."). Accordingly, this claim is subject to an unexcused procedural default and will be dismissed on such grounds.

■ In any event, even if the merits were to be considered, this claim would fail. For an erroneous jury instruction to merit habeas relief, "it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Davis v. Strack,* 270 F.3d 111, 123 (2d Cir.2001) (citing *Cupp v. Naughten,* 414 U.S. 141, 146, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)). "The question is not [only] whether the trial court gave a faulty instruction, but [also] whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* at 123 (citation and internal quotation marks omitted).

■ Petitioner is unable to satisfy this standard. The trial court instructed the juror that he could not conduct a personalized assessment of the evidence based upon his knowledge as a law clerk and communicate that assessment to the remaining jurors. Trial Tr. at 363. This instruction was appropriate under state law. *See People v. Maragh,* 94 N.Y.2d 569, 574, 708 N.Y.S.2d 44, 729 N.E.2d 701 (2000) (holding that a juror who is an

expert in a specific area may not share with the remaining members any conclusions they draw from their experience that is not within the common ken of juror knowledge). Further, petitioner has offered nothing to suggest that this instruction, even if it was improper, was sufficiently damaging to violate due process. *Davis*, 270 F.3d at 123 (holding that in order to violate due process, an improper state law jury instruction must be sufficiently harmful to make the conviction unfair). Indeed, given the significant evidence of guilt in this case, it is unlikely this ruling prejudiced the verdict in any way.

## F. Ineffective Assistance of Trial Counsel

Lastly, petitioner contends that he received ineffective assistance from defense counsel. *See* Petitioner's Mem. at 14–17. Liberally construed, petitioner's memorandum of law appears to allege that counsel: (a) erred in some unexplained way concerning the trial court's *Sandoval* ruling; (b) failed to object to the trial court's instruction to the law clerk juror; (c) failed to investigate or request a curative instruction following a prospective juror's comment that he may have seen petitioner in jail; (d) failed to investigate the informant's criminal history for impeachment purposes; (e) failed to object to the admission of a DVD recording of the drug transaction that did not contain audio; and (f) failed to object to the prosecution's misconduct in offering the DVD without audio and narrating the video to suggest that there was a transfer of money for drugs. Petitioner's Mem. at 14–17. These claims are largely unexhausted and procedurally barred.

As discussed above, a petitioner must exhaust his state court remedies before seeking habeas relief. *See* 28 U.S.C. § 2254(b)(1). This requires that a petitioner "fairly present" each claim for habeas relief in each appropriate state court. *Baldwin*, 541 U.S. at 29, 124 S.Ct. 1347. "A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and the legal premises of the claim he asserts in federal court.'" *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir.1997) (citation omitted). A claim is not properly exhausted if it raised for the first time on habeas review. *See Ellman v. Davis*, 42 F.3d 144, 147 (2d Cir.1994); *Green v. Legoney*, No. 1:09–CV–0747, 2012 WL 5278465, at *8 (S.D.N.Y. Oct. 25, 2012) (finding a petitioner's habeas claim unexhausted because it was never presented in state court). Further, if a petitioner has failed to exhaust his state court remedies, and no longer has remedies available to pursue his claims, then they are deemed exhausted and are also procedurally defaulted. *See Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir.1994). Defaulted claims are not subject to habeas review unless the petitioner can demonstrate either cause for the default and actual prejudice from the alleged violation of federal law, or that the failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 749–50, 111 S.Ct. 2546.

Petitioner's claims set forth under grounds (c) through (f) above have never been raised in any state proceeding. Instead, it appears they are being asserted for the first time in this petition. *See* Appellant's Br. at 15, 32–33. Accordingly, these claims are unexhausted.[3] *See Green*,

---

3. On direct appeal, petitioner did allege that defense counsel was ineffective for failing to preserve several unidentified issues for appeal. *See* Appellant's Br. at 32–33 ("Should it be deemed by [the Appellate Division] ... that trial counsel did not properly raise or pre-

serve issues concerning the matters raised in this appeal, then it should be considered ineffective assistance of counsel[.]"). This general allegation, however, is insufficient to properly exhaust the specific ineffective assistance

2012 WL 5278465, at *8. These unexhausted claims are also procedurally defaulted because petitioner cannot now pursue them by way of any state court procedure. *See* N.Y.Crim. Proc. Law § 440.10(2)(c) (barring record based claims that could have been raised on direct appeal but unjustifiably were not); *Sweet v. Bennett,* 353 F.3d 135, 139–41 (2d Cir.2003) (finding petitioner's ineffective assistance claim procedurally defaulted where it was never raised on direct appeal); *Spence v. Superintendent,* 219 F.3d 162, 170 (2d Cir.2000) ("Because [petitioner] failed to raise his claim in the ordinary appellate process and can now no longer do so, it is procedurally defaulted."); *Azzara v. United States,* Nos. 10–CV–8104, 7:02–CR–1446, 2011 WL 5025010, at *6 (S.D.N.Y. Oct. 20, 2011) (finding petitioner's claim that counsel failed to properly investigate his case procedurally defaulted because it could have been raised on direct appeal but was not).

■ Therefore, these claims may only be reviewed if petitioner establishes cause for the default and resulting prejudice, or a fundamental miscarriage of justice. *Coleman,* 501 U.S. at 749–50, 111 S.Ct. 2546. Petitioner has alleged neither cause for, nor prejudice resulting from, his failure to raise these claims on direct appeal. *See* Petitioner's Mem. at 14–17. Indeed, petitioner's memorandum of law is silent as to any explanation for his failure to properly pursue these arguments. *Id.* Petitioner does not, and cannot, rely on any claim of ineffective assistance of appellate counsel as cause for failure to raise these claims on direct appeal because petitioner has not raised, much less exhausted, an independent ineffective assistance of appel-

late counsel claim in state court. *See Edwards,* 529 U.S. at 452–53, 120 S.Ct. 1587 (concluding that a claim of ineffective assistance of counsel can constitute cause to excuse a procedural default only if such a claim is properly exhausted itself). Finally, as already discussed, petitioner has failed to allege any facts to suggest he is actually innocent of the underlying charge. *See supra* Section III(E). Accordingly, petitioner's ineffective assistance claims set forth under grounds (c) through (f) above will be denied and dismissed.

■ Although petitioner's remaining ineffective assistance claims were properly exhausted, they nonetheless do not entitle petitioner to habeas relief. First, petitioner's claim that trial counsel erred in some way related to the *Sandoval* ruling is too vague and conclusory to permit review. Petitioner does not explain, either in his petition or his appellate brief, what mistakes counsel allegedly committed with regard to this hearing. *See Skeete v. New York,* No. 1:03–CV–2903, 2003 WL 22709079 at *2 (E.D.N.Y. Nov. 17, 2003) ("[V]ague, conclusory and unsupported claims do not advance a viable claim for habeas corpus relief."). Additionally, petitioner's claim that counsel improperly failed to object to the court's law clerk juror instruction is baseless. As explained above, the court's instruction fully complied with the governing law and was not erroneous. *See supra* Section III(E). Counsel cannot be faulted for omitting meritless objections. *See United States v. Kirsh,* 54 F.3d 1062, 1071 (2d Cir.1995) (denying ineffective assistance claim in part because motions not pursued by trial

---

claims now asserted in this habeas action. *See, e.g., Smith v. Duncan,* 411 F.3d 340, 348–49 (2d Cir.2005) (holding general claim that state evidentiary error denied petitioner a fair trial was insufficient to exhaust a claim of constitutional dimension); *Jackson v. Edwards,* 404 F.3d 612, 619 (2d Cir.2005) ("In

developing and refining the 'fairly present[ed]' standard, the Supreme Court has concentrated on the degree of similarity between the claims that a petitioner presented to the state and federal courts." (citations omitted)).

counsel were without merit). Accordingly, the Appellate Division's rejection of these claims was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.

■ In addition, despite petitioner's contention otherwise, the record in this case clearly provides that petitioner received effective assistance throughout the proceedings. Counsel "appropriately conducted jury voir dire, made articulate opening and closing statements, effectively cross-examined witnesses, including the CI, successfully moved to have the majority of the audiotape ruled inadmissible, and made appropriate objections and motions[.]" *Wilson,* 78 A.D.3d at 1217, 910 N.Y.S.2d 276. Although it appears petitioner is now unsatisfied with certain strategic decisions, counsel's overall effort demonstrates that his representation was effective. *See Jeremiah v. Artuz,* 181 F.Supp.2d 194, 203–04 (E.D.N.Y.2002) (rejecting ineffectiveness claim in light of counsel's overall performance).

For these reasons, petitioner's ineffective assistance claims will be denied and dismissed.

## IV. CONCLUSION

Therefore, it is

ORDERED that

1. The petition for a writ of habeas corpus, Dkt. No. 1, is DENIED in its entirety and DISMISSED;

2. The Clerk is directed to serve a copy of this Decision and Order on the parties in accordance with the Local Rules; and

3. No certificate of appealability shall be issued in this case because petitioner has failed to make a "substantial showing

of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2).[4]

IT IS SO ORDERED.

---

4. *See Miller–El v. Cockrell,* 537 U.S. 322, 336, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) ("[Section] 2253 permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right' " (citation omitted)).